### In re GRAFF et al.

#### (District Court, E. D. New York. May 14, 1917.)

**1.** BANKRUPTCY ⟨key⟩438—COMPOSITION—RIGHTS AS TO PROPERTY UNDISPOSED OF.

Certain persons claiming to be creditors of a bankrupt firm were claimed by the other creditors to be partners of the bankrupts. J., acting as their representative, or as the representative of the bankrupts, bought up the other claims and the proceedings were terminated by an agreement between all of the parties interested, under which the estate in the hands of the trustee was turned over to J. in full settlement of all of his claims, but the individual property of N., one of the bankrupts, was released and given back to him. The bankrupts, individually and as partners, were discharged. Certain certificates of stock and certificates of indebtedness, which had been in the hands of the trustee, but not scheduled, and apparently considered worthless, were returned to N., and subsequently proved to be valuable. *Held*, that J. had no claim thereto after the expiration of the time for setting aside a composition or a discharge; the situation being exactly as though a composition had been offered and approved.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 626.]

**2.** BANKRUPTCY ⟨key⟩417(4), 491—COMPOSITION—DISCHARGE—SETTING ASIDE—LIMITATIONS.

While N., by applying to the bankruptcy court for an order reopening the proceedings to the extent of taking over the shares of stock and offering them for sale, in order to make his title thereto good, waived the effect of the statute of limitations, so far as it was something to be taken advantage of by himself, he did not waive the statute as to his discharge, nor as to the possibility of indictment for making false statements in the schedules.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 871.]

**3.** BANKRUPTCY ⟨key⟩372—REOPENING PROCEEDINGS—JURISDICTION.

It was within the jurisdiction of the bankruptcy court to grant N.'s application for leave to turn the property over to the estate and to sell it, in order to remove any question as to title from the failure of such property to pass through the hands of the bankruptcy court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 574.]

In Bankruptcy. In the matter of G. Edward Graff and another, individually, etc., bankrupts. On applications by Thomas F Nevins and others to show cause. Ordered in accordance with the opinion.

Walter H. Merritt, of New York City, for petitioner People's Trust Co.

Watson & Jameson, of Brooklyn, N. Y., for Thomas F. Nevins.

CHATFIELD, District Judge. Thomas F. Nevins, one of the bankrupts above named, owned and scheduled certain property, including some Florida real estate and some personal jewelry (in the possession of his wife and evidently family keepsakes), which was never turned over to the trustee. It appears from the record that both of the bankrupts had one or two wealthy residents of Brooklyn as customers, who presented claims as creditors against the estate for stock-brokerage balances. These men were claimed by the other creditors to have been partners of the bankrupts in certain speculations.

If this claim of partnership was substantiated, the amount due from

these well-to-do men would have enabled the bankrupts to pay all of their other creditors and to have left a surplus in the hands of the firm. These questions were never determined, but Mr. Edward Johnson, now deceased, whose executor is making the present application, acted apparently as representative of the alleged partners of the bankrupts in buying out and presumptively paying off in full all the other creditors of the bankrupts, and thus leaving only himself and the men charged to have been partners with the bankrupts interested in the estate.

While Johnson thus by assignment succeeded to the rights of the other creditors, he nevertheless was not a third party dealing with the bankrupts as an innocent purchaser for value of these claims. His position was subject to such equities as knowledge of the entire transaction might invoke, and his position was in effect the same as that of the creditors who were alleged to be partners with the bankrupts. The bankruptcy proceedings were terminated by an agreement between all of the parties interested, under which the estate, then in the hands of the trustee, was turned over to Johnson in full settlement of all his claims. But the personal property of Nevins, consisting of the Florida land and the jewelry above mentioned, and also an indorsement upon certain notes which Nevins had previously made to further the settlement, were released and given back to him. He in effect surrendered nothing but the firm assets, in the hands of the trustee. In other words, he as an individual was relieved from any obligation beyond his relinquishment of claim to the joint property of the firm.

The final order directing distribution upon this basis of settlement was entered February 7, 1903. It was in effect the payment of a final dividend, but was based upon a composition, and could be attacked for fraud only within the period of 6 months, under section 13, or 12 months after discharge, under section 15, of the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 550 [Comp. St. 1916, §§ 9597, 9599]). The time to appeal has long since expired, as has also the period within which any claim could be made against the trustee for any of his acts (section 50, subd. "m" [Comp. St. 1916, § 9634]).

It appears, although the evidence is not clear, that among the papers in the office of the bankrupt partnership, at the time the trustee was in possession, were certain certificates of stock, a note, and two certificates of indebtedness of the Brooklyn Citizen, which were returned to the bankrupt Nevins, by mail, at some time subsequent to the negotiations under which the bankruptcy proceedings were settled. Nevins testifies on this present application that he did not consider this stock and these certificates of any substantial value at that time, and did not consciously omit them from his schedules, which were made up with the partnership schedules by bookkeepers, and which did show the Florida land and the jewelry above referred to.

It appears that during the last few years a considerable amount, viz., about $4,915.21, has been paid by the Brooklyn Citizen to Nevins on account of the note and certificates, and that a certain litigation has been brought by Nevins against the Citizen, because of the possession and claimed ownership of the shares of stock. In this litigation an order was made allowing the Citizen, on terms, to amend its answer, so as to allege lack of title in Nevins because of the adjudication in

bankruptcy and alleged concealment of these assets. Appeal was taken to the Appellate Division, and the Appellate Division for the first time considered the jurisdictional objection that Nevins was not the owner of the stock in question, and in affirming the order appealed from intimated that discharge and distribution in bankruptcy might not have caused title to these assets to revert to Nevins. Nevins thereupon applied to this court for an order reopening the bankruptcy proceedings, to the extent of taking over the shares of stock and offering them for sale, and he presented a bid of $500 therefor.

Inasmuch as the trustee had been discharged, and could not be reinstated, except upon notice to creditors and after another election, the court provided that the former trustee should, if the matter were approved, execute for the court such instrument as would pass the title of the bankrupt estate in and to the property. Upon the hearing of this application, a second bid of $1,000 for the certificates was presented, and it was urged upon the court that the offer of $500 was inadequate. The sale was adjourned, and has not been concluded. In the meantime the executor of the estate of Johnson has obtained an order to show cause why the bankruptcy proceeding should not be reopened and referred to a referee, to obtain the property which was owned by Nevins at the time of the bankruptcy proceedings, and which was not included in his schedules, together with the income, proceeds, and profits derived from such property, and staying any further action upon the application of Nevins for the sale of the shares of stock and certificates of indebtedness. Upon a hearing of the last order to show cause the foregoing facts have all been presented and argued.

[1] It appears that the settlement which led up to the dismissal of the bankruptcy proceedings was based upon payment by Johnson to all of the creditors, except those who were charged with partnership liability. It would appear that Johnson, in so far as he was acting in the matter, had no personal interest, and represented either the bankrupts, in order to settle with their so-called partners, or that he represented these so-called partners, and bought up the claims for their benefit, in order to free themselves from further obligations to the bankrupt estate. In either event, the consent of all parties to the settlement, upon the basis of delivery to Johnson of the property in the hands of the trustee, except such as belonged to Nevins, shows no fraud upon creditors, and shows no personal interest of Johnson in the estate. As between the bankrupts, or as between Nevins and those men charged with the interest of partners, in the stock-speculating operations, there was an absolute refusal on the part of Nevins to contribute to the fund which was turned over to Johnson and which he presumably used in accordance with his agreement with the gentlemen who were alleged to be partners in the bankrupt concern. They consented to the settlement and termination of the bankruptcy proceedings and to the delivery of this property to Johnson. If Johnson was acting as their representative, they freed themselves from further demands at the hands of the creditors and of the bankrupts, by paying the amount necessary to remove all the other creditors, presumptively at the face value of their claims, from the case. If Johnson did not represent these gentlemen, but agreed to relieve them from further claims, upon their

relinquishing any rights to the property which Johnson bought, by paying off the other creditors, then under these circumstances Johnson would have no claim to any of the property which was not in the hands of the trustee at the time he made the settlement in question.

It is apparent, therefore, that the estate of Johnson has no claim to the assets now discovered to be in the hands of Nevins, and Johnson is no longer a creditor of the bankrupt estate. The report of the trustee, dated February 7, 1903, sets forth the assets in his possession and realized by him as trustee, and these are the assets which were turned over to Johnson, and for which Johnson, as trustee or agent, acquired the rights from all of those parties (with the exception of one $12 claim, which was paid in full with his consent) who were not relieving themselves of demands at the hands of the bankrupts, sufficient in amount to more than pay the bankruptcy claims.

The bankruptcy proceeding was concluded in the form of a dividend to the only person then occupying the position of creditor. The trustee was discharged, and his bond relieved from further liability. On the 7th of February, 1903, the bankrupts, individually and as members of the copartnership, were discharged, upon the written consent of the attorneys for Johnson, and by the report of the trustee, made April 25, 1903, it is shown that the trustee had paid the estate in his hands to the sole party occupying the position of creditor, and had "turned over the books and papers belonging to the bankrupt estate to the custody of G. Edward Graff, one of the bankrupts." It is evident that if the shares of stock and certificates of the Brooklyn Citizen were in the office of the bankrupts, and all the books and papers in this office were turned over to Graff, there would be nothing mysterious in the delivery of these shares of stock and certificates to Nevins, whose personal property they evidently had been. The trustee never saw them, or knew of them, and they were not a part of the property to be turned over if the compromise was effected under the assignment made by which Johnson became sole creditor.

This is not a case where one creditor has bought in the claims of the others and taken over the business, or has sought to minimize his own loss by purchasing the property as a whole, in order to preserve it as a going concern. While the case was wound up as if a dividend had been declared, the situation is exactly that which would have been presented if the bankrupts had offered a composition, and the effect of the discharge is to wipe out all the rights of action on behalf of Johnson or any other of the creditors against the bankrupts. The situation must be viewed in equity exactly as if the bankrupts had offered $192,-000, more or less, in composition of all their claims, and had thus obtained a discharge and a dismissal of the proceedings, upon approval of the composition. Section 12, subd. "e" (Comp. St. 1916, § 9596). But, if fraud were shown, the only remedy would be to set this composition aside within six months, or to proceed by indictment, if a false statement had been presented in the schedules. The statute of limitations has run against any such remedy. The creditors of the estate have had their claims satisfied, except in so far as a compromise of conflicting claims between the bankrupts and those who were

alleged to be their partners was settled by the giving up by the bankrupts of all claims to the assets which had been scheduled, and by retention on the part of the bankrupts of all assets which may not have been brought to the attention of the trustee.

The case does not show fraud, which would have prevented the discharge, if these assets had been discovered prior to bankruptcy. The most that could have happened would have been that they would have been taken into possession by the trustee as having been omitted through mistake. The evidence of this property was apparently in the hands of the trustee when the schedules were made up, but unknown to the accountants or attorneys who were preparing the schedules, and if the certificates had not been returned to Nevins after the case had been closed, it is impossible to tell how soon he would have remembered previous possession of this stock. Its subsequent rise in value has no bearing upon the title which he obtained at the time of bankruptcy. It apparently was considered worthless then, and his former creditors have no right to object if this property, like the Florida land, experienced a sudden and great increase in value.

[2] The finding of the Appellate Division that the title of Nevins can possibly be attacked for fraud is a finding only to the effect that, if his title be fraudulent or imperfect, he cannot ask relief thereon. The matter was sent back for hearing upon the merits in the state Supreme Court. Nevins has sought to make his title good, against the claim of fraud, by a purchase at the hands of the bankrupt estate. He has thereby undoubtedly waived the effect of the statute of limitations, in so far as the statute of limitations is something to be taken advantage of by himself. He does not waive the statute of limitations as to his discharge, nor as to the possibility of indictment, and accomplishes only the result that the personal property could be dealt with like real estate. If this were real property, title would vest in the bankruptcy estate, until conveyed under the statute. That title could not be cleared, except by a sale, and the proceedings could be reopened and title made. If the creditors had been paid in full, or if a composition agreement had been carried through, and if the balance of the estate had been turned back to the bankrupt, then any after-discovered property, which might result in further proceeds, would also be turned back to the bankrupt, or, if sold, the proceeds would go to him. To hold that a mistake by a bankrupt in the filling out of his original schedules, by which mistake certain valueless property was not taken into account, and which property would not have increased the estate in any way during the period in which the estate was being administered, and which property, if it had been known to the creditors, would not have altered the situation, could be made a basis for upsetting the entire bankruptcy proceeding, would result in an endless series of litigation over every accidental error, which might be taken advantage of by creditors who wished to harass a bankrupt, by disputing the subsequent value to him of property which, even if known to the creditors, would have been considered as of no value whatever.

[3] The application to show cause why the estate should not be opened and this property administered as a part thereof should be

denied. The application of Nevins for leave to turn the property over to the estate, and to sell the same, is within the jurisdiction of this court to carry out, in order to make title to those assets as to which property was vested in the bankrupt estate, and as to which any question as to title may exist from the fact that they have not passed through the hands of the bankruptcy court. If such sale is had, the proceeds would appear to belong to Nevins, after the payment of expenses, subject to any rights as between Graff and Nevins, or the individual creditors of each, inasmuch as the trustee apparently returned the books and papers—that is, the office paraphernalia—to the partner Graff, and left in the possession of Nevins the Florida land, jewelry, and the notes which Nevins had indorsed and which had not been used.